UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Daniel Jett | David Lester |

**Proceedings:** DEFENDANTS AZUZA PACIFIC UNIVERSITY AND HEATHER PETRIDIS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 27, filed March 4, 2019)

## I.  INTRODUCTION

On October 22, 2018, plaintiff Patrick Horn filed this action in the Superior Court of California for the County of Los Angeles against his former employer, Azusa Pacific University ("APU"), his former supervisor, Heather Petridis, and Does 1 through 10, inclusive.  Dkt. 1-2.  The gravamen of this action is that defendants terminated his employment in retaliation for his complaints of unlawful national origin discrimination on behalf of another employee.

Defendants removed this action to this Court on November 28, 2018, pursuant to 28 U.S.C. § 1442(a).  Dkt. 1.  On December 5, 2018, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dkt. 10, along with a request for judicial notice of APU's articles of incorporation, dkt. 10-2.  The Court granted in part and denied in part defendants' motion to dismiss.  Dkt. 21 ("Order").  On February 18, 2019, plaintiff filed his first amended complaint.  Dkt. 22 ("FAC").  In the amended complaint, plaintiff alleges claims for: (1) unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) as against APU; (2) unlawful retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(h) as against APU; (3) unlawful retaliation in violation of California Labor Code section 1102.5 as against APU; (4) wrongful termination in violation of public policy as against APU; (5) breach of written contract as against APU; (6) intentional interference with contract as against Petridis; (7) intentional interference with prospective economic advantage as against Petridis; (8) negligent supervision and retention as against APU; (9)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

failure to timely produce personnel records upon lawful demand in violation of section 1198.5 of the California Labor Code as against APU; (10) intentional infliction of emotional distress as against APU and Petridis; and (11) unfair business practices in violation of California Business and Professional Code sections 17200, et seq. as against APU. Id.

On March 4, 2019, defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6), dkt. 27 ("Mot."), along with the same request for judicial notice of APU's articles of incorporation, dkt. 28. On March 18, 2019, plaintiff filed an opposition. Dkt. 31 ("Opp'n"). Defendants filed a reply on March 25, 2019. Dkt. 32. ("Reply"). The Court held a hearing on April 8, 2019.

Having carefully considered the parties' arguments, the Court rules as follows.

## II. BACKGROUND

Plaintiff alleges the following facts in the first amended complaint.

APU employed plaintiff as its Executive Director of Graduate and Professional Enrollment and Student Services from about July 1, 2011, through about January 3, 2018. FAC ¶ 9. Plaintiff's employment was based on annual written contracts which coincided with APU's academic calendar. Plaintiff and APU's most recent written employment agreement covered the period of July 1, 2017, through June 30, 2018. Id. Ex. 1 ("Agreement"). Plaintiff reported to Petridis and received high marks on his annual performance reviews. Id. ¶ 10. However, on December 26, 2016, Petridis suffered a neurological or vascular event in her brain which caused her to be hospitalized. Id. ¶ 11. After Petridis's return to work around February 15, 2017, plaintiff noticed a change in her behavior. Id. ¶ 14. According to plaintiff, Petridis began to falsely accuse plaintiff of misconduct or inappropriate behavior and otherwise mistreat plaintiff and his colleagues. Id.

APU maintains an anti-nepotism policy which bars the hiring of relatives by blood and direct marriage of other, current APU personnel. Id. ¶ 16. Sometime before February 2017, Hana Jabbor Elias applied for the position of Senior Technology Manager and answered "no" to the question on her application asking if she was related to any APU employee, id. ¶ 18, although, in fact, her husband was the brother of the wife of Fadi Mamar, the Executive Director of APU's Technology Solutions Department, id. ¶ 15. In or around February 2017, APU hired Elias. Id. Elias reported to Mamar, who reported to plaintiff, who reported to Petridis. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. |

Around June 2017, Petridis informed plaintiff that she had overheard Elias stating that her husband was the brother of Mamar's wife. Id. ¶ 17. APU's Human Resources Department subsequently investigated the relationship between Mamar and Elias. Id. ¶ 18. On multiple occasions in July and August 2017, plaintiff and Petridis discussed Elias's employment application, her relationship to Mamar, and what the repercussions of Elias's failure to indicate her relationship to Mamar on her employment application should be. Id. ¶ 19. Plaintiff expressed to Petridis on multiple occasions that he did not believe Elias's failure to "check the box" on her employment application and disclose a non-blood family relationship, which was not included within the scope of APU's anti-nepotism policy, should be the grounds of termination of Elias or Mamar. Id. Plaintiff told Petridis that he believed any failure by Elias to check the correct box on her employment application was attributable to the vague wording of the question and the fact that Elias was an immigrant and not a native English speaker. Id.

On September 19, 2017, during a meeting with Petridis and APU's Director of Human Resources, John Baugus, plaintiff protested Petridis's plan to terminate Elias for failing to indicate her relationship to Mamar on her employment application to APU. Id. ¶ 21. Plaintiff reiterated his contention that terminating Elias would constitute discrimination against her on the basis of national origin because her English skills likely contributed to her misunderstanding of the employment application. Id. Petridis and Baugus nonetheless instructed plaintiff to terminate Elias's employment. Id. One day later, Baugus sent a draft of Elias's termination letter to plaintiff via email. Id. ¶ 22. The letter to Elias was to be signed by plaintiff, and the draft included the sentence: "I [plaintiff] concur in this decision [to terminate Elias for failing to disclose her relationship with Mamar]." Id. Plaintiff replied to Baugus's email, copying Petridis, instructed Baugus to remove the aforementioned sentence because he did not concur in the decision, and reiterated his concern that terminating Elias was a "grave mistake." Id.

On September 21, 2017, plaintiff met with Elias and terminated her employment. Id. ¶ 23. The next day, Petridis told plaintiff that in his role as a supervisor, plaintiff should "agree with the University" in its personnel decisions. Id. ¶ 24. A few days later, Petridis told plaintiff that some questions had come up regarding the termination of Elias and called plaintiff in for a meeting with her and Mark Dickerson, Senior Vice President and General Counsel for APU. Id. ¶ 25. During the meeting, Dickerson said he believed plaintiff's language in his email to Baugus regarding the proposed termination letter was "aggressive." Id. Petridis then turned the conversation towards her dissatisfaction with plaintiff's job performance and expressed her intent to issue a written reprimand and demote plaintiff by removing all of his supervisory responsibilities. Id. ¶ 26. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
|---|---|---|---|
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

then asked to be transferred to a different job in a different department at APU, and Dickerson replied that under APU policy, he would be ineligible for any transfer within six months of receiving a written reprimand. Id. ¶ 27. Plaintiff then asked about his right to appeal the imposition of discipline against him, and Petridis and Dickerson responded that they "would get back to him." Id. ¶ 28. Petridis then instructed plaintiff not to engage with his former subordinates and directed his subordinates to receive their assignments directly from her. Id. ¶ 30. Petridis instructed plaintiff to not discuss his "change in role" with anyone else at APU. Id.

On October 3, 2017, plaintiff met again with Petridis and Dickerson. Id. ¶ 29. Petridis and Dickerson asked plaintiff to respond to Petridis's charge of job performance problems, and plaintiff explained that he had not been derelict in his duties and that he would remedy any perceived deficiencies. Id. At the conclusion of that meeting, Petridis and Dickerson told plaintiff that they would "get back to him soon." Id. On October 12, 2017, Petridis delivered a memorandum to plaintiff which effectively denied his appeal and formally imposed the disciplinary steps that she had previously announced: a written reprimand for plaintiff's personnel file and removal of all his supervisory duties. Id. ¶ 30.

Plaintiff subsequently discussed his situation with multiple co-workers to seek their input as to how to handle his predicament and to warn his co-workers about the repercussions of complaining of illegal or unfair treatment in the workplace. Id. ¶ 31. On October 24, 2017, Petridis met with plaintiff and asked him if he had discussed his demotion and removal of supervisory responsibilities with any of his co-workers. Id. ¶ 32. Plaintiff admitted that he had, and on October 31, 2017, Petridis issued plaintiff a 60-day notice of termination of his employment. Id. ¶ 33. APU continued to employ plaintiff through January 3, 2018. Id.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level . . ." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); Moss, 572 F.3d at 972. However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Defendants move to dismiss plaintiff's claim for unlawful retaliation in violation of FEHA, arguing again that APU, as a nonprofit religious corporation, is expressly exempt from FEHA. Mot. at 3. Indeed, the Court previously dismissed this claim without prejudice after taking judicial notice of APU's articles of incorporation for the fact that APU is incorporated as a nonprofit religious corporation, and finding that APU was thus exempt from FEHA pursuant to section 12926(d) of the California Government Code. Order at 8–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

Plaintiff resisted this conclusion, arguing that APU's articles of incorporation did not evince *how* APU governed itself at the time of plaintiff's termination. The Court rejected this argument, reasoning that section 12926(d) does not concern itself with how a corporation functions, but rather how it is organized. See Cal. Gov't Code § 12926(d) (excluding "religious association[s] or corporation[s] not *organized* for private profit") (emphasis added). The Court also observed that plaintiff had not made any allegations suggesting that APU had not abided by its articles of incorporation. Order at 9. Plaintiff also argued, without citation to any authority, that APU waived its exemption under FEHA by adopting anti-discrimination policies. The Court was not persuaded by this argument, explaining that "it does not follow that because APU may have adopted some anti-discrimination policies, it has voluntarily subjected itself to all anti-discrimination laws." Id. at 10.

The Court provided plaintiff with leave to amend his complaint. Id. at 20. The first amended complaint, with respect to this issue, adds the following allegation:

> Plaintiff is further informed and believes, and thereon alleges, that APU claims to be organized as a "non-profit religious corporation" within the meaning of California Corporations Code sections 9110, *et seq.*, but waived that designation to the extent that it intentionally adopted policies prohibiting discrimination, harassment and retaliation in employment on the basis of the protected status of national origin.

FAC ¶ 2. According to plaintiff, this allegation alone puts the fact "that APU is a religious corporation that has not waived its immunity" into reasonable dispute, and thus precludes the Court from taking judicial notice of APU's articles of incorporation. Opp'n at 2. However, the issue of whether APU waived its immunity under FEHA is entirely separate from the issue of whether APU is a nonprofit religious corporation under California law. Plaintiff cites no authority, nor can he, establishing that an entity's corporate status can be altered by merely adopting anti-discrimination policies. Thus, the Court finds no reason to depart from its earlier decision granting APU's request for judicial notice. Accordingly, for the same reasons stated in its previous order, the Court takes judicial notice of APU's articles of incorporation for the fact that it is organized as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

nonprofit religious corporation.[1]  Accordingly, APU is expressly exempt from FEHA and plaintiff's FEHA claim must be dismissed.

As for plaintiff's suggestion that the Court must accept as true at the motion to dismiss stage his allegation that APU waived its immunity from FEHA by adopting anti-discrimination policies, Opp'n at 5, the Court finds that this allegation is an unsupported legal conclusion which the Court need not accept as true.  Moreover, the Court remains unpersuaded that this proposition is legally cognizable.  Plaintiff relies on the general rule that statutory rights may be waived in certain situations but fails to explain how that rule applies here.  And the only authority plaintiff relies on for his particular argument is Badilla v. Crespi Carmelite High School, Inc., No. BC598212, 2016 WL 10727629 (Cal. Superior Ct. Nov. 2, 2016), an unpublished trial order from the Los Angeles County Superior Court which, without any analysis or citation to legal authority, found that a triable issue existed as to whether a religious nonprofit waived its immunity under FEHA by adopting anti-discrimination policies.  The Court is not bound by the decision in Badilla and is unpersuaded by the conclusion reached in that case.  Although APU is not subject to FEHA, APU represents that it is nonetheless required to comply with Title VII of the Civil Rights Act of 1964, which requires employers to disseminate anti-discrimination policies consistent with Title VII.  Reply at 3–4.  Given that APU is subject to other anti-discrimination laws, including Title VII, the mere allegation that APU adopted anti-discrimination policies is insufficient to demonstrate that APU waived its immunity under FEHA.  The Court thus finds, as it did in its previous order, that plaintiff's waiver argument is unavailing.[2]  See Order at 10.

---

[1]  Plaintiff also argues that the Court cannot take judicial notice of APU's articles of incorporation, which were filed with the State of California in 2005, for the fact that APU is *currently* organized as a nonprofit religious corporation.  Plaintiff, however, makes no argument, nor does the first amended complaint include any allegations, suggesting that APU has changed its corporate status.  The Court thus finds that the fact that APU is organized as a nonprofit religious corporation is not reasonably in dispute and remains appropriate for judicial notice.

[2]  At oral argument, counsel for plaintiff argued that, because APU could hypothetically waive its immunity by failing to maintain its corporate status, it could therefore also waive its immunity by adopting anti-discrimination policies.  The Court finds this argument to be inapposite because, as an initial matter, it is incorrect to assume that a religious nonprofit would lose its FEHA immunity even if it were suspended for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-09948-CAS-PLAx | Date | April 9, 2019 |
| Title | PATRICK N. HORN v. AZUSA PACIFIC UNIVERSITY ET AL. | | |

Although plaintiff does not explicitly request leave to amend his complaint, the Court nonetheless finds that the allegation of other facts consistent with the pleading could not possibly cure the deficiencies identified herein.  Indeed, plaintiff has already been afforded an opportunity to amend his complaint and was unable to cure those deficiencies.  Accordingly, the Court **DISMISSES with prejudice** plaintiff's FEHA claim.

## V.  CONCLUSION

For the foregoing reasons, the Court **DISMISSES with prejudice** plaintiff's claim for retaliation in violation of FEHA.  Defendants shall file their answer within twenty days of the entry of this order.

IT IS SO ORDERED.

| | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

some reason, such as failing to pay taxes.  Rather, FEHA excludes from the definition of an "employer" any corporation *formed* as a religious nonprofit under the California Corporations Code.  See Cal. Gov't Code § 12926 (an "employer" under FEHA "does not include a religious association or corporation not organized for private profit); Cal. Gov't Code § 12926.2 ("'Religious corporation' means any corporation formed under, or otherwise subject to Part 4 . . . of Division 2 of Title 1 of the Corporations Code[.]"); Cal. Corp. Code § 9120 ("One or more persons may form a [Nonprofit Religious Corporation] by executing and filing articles of incorporation.").  Thus, it appears that the triggering event for gaining immunity under FEHA is the filing of articles of incorporation as a nonprofit religious corporation, and plaintiff has not identified any statute or caselaw providing that an entity formed as a nonprofit religious corporation would become an "employer" under FEHA by failing to maintain its corporate status.  Plaintiff's argument is also inapposite because the fact that a suspended corporation lacks the legal capacity to defend a civil action during its suspension does not mean that the corporation knowingly and intentionally waived its statutory protections.  The two situations bear no logical connection for purposes of determining whether a nonprofit religious corporation could waive its immunity under FEHA.